UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

VITALII C.,

           Petitioner,

    v.

KRISTI NOEM, et al.,

           Respondents.

No. 1:26-cv-02081-TLN-CKD

A # 249-413-802

**ORDER**

       This matter is before the Court on Petitioner Vitalii C.'s[1] ("Petitioner") Petition for Writ of Habeas Corpus. (ECF No. 1.)  Respondents filed an opposition.  (ECF No. 5.)  Petitioner filed a reply. (ECF No. 10.)  For the reasons set forth below, Petitioner's Habeas Petition is GRANTED.[2]  (ECF No. 1.)

///

---

[1]    The Court omits Petitioner's full name to protect sensitive personal information.  *See* Memorandum re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

[2]    On May 19, 2026, this Court issued a minute order granting Petitioner's Habeas Petition and ordering his immediate release.  (ECF No. 15.)  This order explains the Court's reasoning.

1

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Petitioner is a noncitizen who entered the United States on September 29, 2024.  (ECF No. 5-1 at 10.)  Petitioner, accompanied by his wife and their minor children, arrived with a scheduled CBP One appointment.  (*Id.*)  Petitioner asked for political asylum and claimed fear of persecution if he returned to his country of citizenship.  (*Id.*)  Petitioner and his family were issued Notices to Appear and paroled into the United States.  (ECF No. 1 at 31–81.)  Petitioner was also issued an Order of Release on Recognizance and required to enroll in an Alternatives to Detention ("ATD") program.  (*Id.* at 83–88.)  He agreed to participate in the Intensive Supervision Appearance program ("ISAP").  (*Id.* at 91–92.)  As part of ISAP, Petitioner agreed to submit weekly check-ins and comply with additional requirements including ISAP home visits.  (*Id.* at 92.)  He also wore an electronic GPS ankle monitor.  (*Id.* at 6.)

Following their entry into the United States, Petitioner and his family resided in California.  (*Id.* at 8.)  Petitioner "bore primarily responsibility for organizing daily life: taking and picking up the children from school, helping with studies, and resolving financial, household, and medical issues."  (*Id.* at 6.)  Petitioner and his wife began taking English classes and enrolled at American River College.  (*Id.*)  Petitioner and his family also applied for asylum and withholding of removal.  (*Id.* at 9–24.)  Petitioner has no criminal history.  (ECF No. 5-1 at 2.)  Petitioner maintains that he violated no conditions of his release.  (*Id.* at 3.)

On January 27, 2026, Petitioner was detained by Immigration and Customs Enforcement ("ICE") when he reported for a check-in at the ATD office in Sacramento.  (*Id.* at 2.)  According to the Government's documents, Petitioner was arrested for having "multiple [ATD] Violations and incidents with ATD staff."  (*Id.*)  His Form I-213 lists two violations for a failed virtual home visit on October 31, 2025, and failed in-person home visit on January 23, 2026.  (*Id.* at 3.)  The form states as to each: "While some causes may result from miscommunication or unexpected conflicts, repeated failures often suggest no-compliance that requires follow up."  (*Id.*)

Petitioner disputes both violations.  (ECF No. 10 at 2–3.)  According to Petitioner, the first violation was for a single missed phone call.  (*Id.* at 2.)  On the scheduled day, Petitioner was instructed to remain at home and wait for a call.  (ECF No. 1 at 6.)  When he received the call, the

officer stated she had previously attempted to contact him, but the call was not answered. (*Id.*) However, Petitioner had no missed call on his phone. (*Id.*) Petitioner explains why he has reason to believe there may have been a technical failure with his reporting application. (ECF No. 10 at 3.) As for the second violation, Petitioner's Form I-213 states he failed the in-person home visit because he refused to allow the case specialist inside his residence. (ECF No. 5-1 at 3.) But Petitioner notes that he met DHS outside his home and his conditions do require him to allow DHS agents inside his home. (ECF No. 10 at 3.)

Following the January 23, 2026 home visit, Petitioner was scheduled for four office appointments over the course of five days. (ECF No. 1 at 6.) He attended each appointment on time. (*Id.*) Petitioner's Form I-213 contains an incident write-up from when Petitioner reported to the ISAP office on January 26, 2026. (ECF No. 5-1 at 3.) According to a program manager, Petitioner was "dismissive and uncooperative with staff," his "tone and behavior were confrontational," "he demonstrated clear resistance to comply with supervision directives," and he displayed "attitude issues toward staff[.]" (*Id.*) Petitioner was detained the following day on a warrant made pursuant to § 236 of the Immigration and Nationality Act ("INA"), which codifies the arrest, detention, and release of noncitizens under 8 U.S.C. § 1226.[3] (*Id.* at 6.) Petitioner was eventually transferred to the Mesa Verde ICE Processing Center. (ECF No. 1 at 2.)

On March 16, 2026, Petitioner filed the instant Petition for Writ of Habeas Corpus. (*Id.* at 1.) Petitioner challenges the lawfulness of his civil detention and seeks immediate release. (*Id.* at 3–4.)

## II.   STANDARD OF LAW

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., art I, § 9, cl. 2). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas

---

[3]   The warrant also cites § 287 of the INA, which is codified at 8 U.S.C. § 1357 and defines the powers of immigration officers and employees. (ECF No. 5-1 at 6.)

3

corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law.  28 U.S.C. § 2241(c)(3).  Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest."  *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001).  Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention.  *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

### III.    ANALYSIS

Petitioner claims his detention violates the Fifth Amendment Due Process Clause.  (ECF No. 1 at 3–4.)  In opposition, Respondents argue Petitioner is subject to mandatory detention under § 1225(b)(2).[4]  (ECF No. 5 at 2–3.)  Respondents submit that if the Court instead finds Petitioner's detention is governed § 1226(a), Petitioner should be provided a custody determination hearing where he bears the burden of proof instead of being immediately released because he violated the terms of his release.  (*Id.* at 3–5.)

The Fifth Amendment Due Process Clause prohibits government deprivation of an individual's life, liberty, or property without due process of law.  U.S. Const. amend. V; *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017).  "[T]he Due Process Clause applies to all 'persons' within the United States, including noncitizens, whether their presence here is lawful, unlawful, temporary, or permanent."  *Zadvydas*, 533 U.S. at 693 (2001).  These due process rights extend to immigration proceedings, including detention and deportation proceedings.  *Id.* at 693–94; *see Demore v. Kim*, 538 U.S. 510, 523 (2003).

Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution.  *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

---

[4]    Unless otherwise noted, citations to statute herein refer to Title 8 of the United States Code.

4

A.    Liberty Interest

"Freedom from imprisonment—from government custody, detention, or other forms of physical restrain—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690 (citing *Foucha v. Louisiana*, 504 U.S. 71 (1992)).  "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025).

The Court finds Petitioner has a clear interest in his continued freedom protected by the Due Process Clause.  It has long been established that individuals like Petitioner, who have been released on parole, maintain an interest in their continued liberty.  *See Morrissey*, 408 U.S. at 482–83.  As the Supreme Court recognized in *Morrissey*, "the liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty and its termination inflicts a 'grievous loss' on the parolee and often on others." *Id.* at 482.  Indeed, after entering the United States in 2024, Petitioner spent his time at liberty caring and providing for his family, learning English, and enrolled in community college.  (ECF No. 1 at 6.)  This liberty is "valuable," and "[i]ts termination calls for some orderly process[.]" *Morrissey*, 408 U.S. at 482.

Respondents do not contest Petitioner's liberty interest, but instead argue Petitioner is an "applicant for admission" subject to mandatory detention under § 1225(b)(2).  The Court is not persuaded.  First, the record shows Petitioner's order of release on recognizance and warrant for arrest were made pursuant to section 236 of the INA, which codifies § 1226, not § 1225(b)(2).  (ECF No. 5-1 at 6–7.)  Respondents' position that Petitioner is now detained under § 1225(b)(2) thus contradicts their own records and appears to be a justification adopted post hoc and raised for the first time in litigation.  *See Jimenez v. FCI Berlin, Warden*, 799 F. Supp. 3d 59, 67 (D.N.H. 2025) (similarly finding a petitioner subject to § 1226(a) where their order of release on recognizance and warrant were issued pursuant to § 1226(a)).

Additionally, courts throughout the Ninth Circuit, including this one, have repeatedly rejected Respondents' argument on the applicability of § 1225(b)(2) to paroled or released noncitizens.  *See e.g.*, *Hortua v. Chestnut*, No. 1:25-cv-01670-TLN-JDP, 2025 WL 3525916 at *3

(E.D. Cal. Dec. 9, 2025); *Estrada-Samayoa v. Cruz*, No. 1:25-CV-01565-EFB, 2025 WL 3268280, at *4 (E.D. Cal. Nov. 24, 2025) (collecting cases).  "These courts examined the text, structure, agency application, and legislative history of 1225(b)(2) and concluded that it applies only to noncitizens 'seeking admission,' a category that does not include noncitizens like [Petitioner], living in the interior of the country." *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC (EMC), 2025 WL 2637503, at *8 (N.D. Cal. Sept. 12, 2025) (collecting cases).  In comparison, "[t]he government's proposed reading of the statute (1) disregards the plain meaning of section 1225(b)(2)(A); (2) disregards the relationship between sections 1225 and 1226; (3) would render a recent amendment to section 1226(c) superfluous; and (4) is inconsistent with decades of prior statutory interpretation and practice." *Lepe v. Andrews*, No. 1:25-CV-01163-KES-SKO (HC), 2025 WL 2716910, at *4 (E.D. Cal. Sept. 23, 2025) (collecting cases).  Respondents put forth no new arguments or facts justifying a different conclusion in this case.

Accordingly, the Court rejects Respondents' arguments and finds Petitioner maintains an interest in his continued liberty protected by the Due Process Clause.

B.   Process Required

To determine what process is necessary to ensure any deprivation of Petitioner's liberty interest accords with the Constitution, the Court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).  As set forth below, these factors support Petitioner's constitutional right to notice and a pre-deprivation hearing.

First, as explained above, Petitioner has a substantial private interest in his own liberty that is unquestionably affected by the Government's actions detaining him.  The amount of time Petitioner spent at liberty underscores the gravity of its loss. *See Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025).  Accordingly, this factor weighs in favor of finding Petitioner has a significant private interest that has been affected by his detention.

Second, the risk of erroneous deprivation of Petitioner's liberty interest is considerable. Because civil immigration detention is "nonpunitive in purpose and effect," a "special justification" must outweigh Petitioner's protected liberty interest for his detention to comport with due process. *Zadvydas*, 533 U.S. at 690. While "[t]he government has legitimate interests in protecting the public and in ensuring that noncitizens in removal proceedings appear for hearings," Petitioner has received virtually no procedural safeguards to ensure any detention is reasonably related to those purposes. *Hernandez*, 872 F.3d 976. Petitioner maintains that he is not a danger or a flight risk. (ECF No. 10 at 6.) Respondents do not claim Petitioner is a danger but instead assert, with no citation to evidence, that he has been shown to be a flight risk. (ECF No. 5 at 4.) As Petitioner has a pending asylum application and his wife and minor children all reside in the United States, the Court is skeptical of Respondents' assertion. Accordingly, the risk that Petitioner is being detained without proper justification remains high. *A.E. v. Andrews*, No. 1:25-CV-00107-KES-SKO, 2025 WL 1424382, at \*5 (E.D. Cal. May 16, 2025).

Third, the Government's interest in detaining Petitioner without notice and a pre-deprivation hearing is low. The effort and cost required to provide Petitioner procedural safeguards are minimal. *See Doe*, 787 F. Supp. 3d at 1094. Notice and custody determination hearings are routine processes for Respondents. Respondents set forth no legitimate interest in detaining Petitioner absent these processes. Any burden associated with their provision does not outweigh Petitioner's substantial liberty interest and the risk of erroneous deprivation.

Upon consideration of the *Mathews* factors, the Court finds due process required that Petitioner receive notice and a hearing before a neutral decisionmaker prior to detention to determine whether his detention was justified. He received neither. Petitioner's detention thus violates the Fifth Amendment Due Process Clause.

C.      Appropriate Relief

The appropriate relief in this case is immediate release. "Habeas is at its core a remedy for unlawful executive detention . . . [and] [t]he typical remedy for such detention is, of course, release." *Munaf v. Geren*, 553 U.S. 674, 693 (2008) (citing *Hamdi*, 542 U.S. at 536); *see Preiser*, 411 U.S. at 484 ("the traditional function of the writ is to secure release from illegal custody.");

7

*Pinson v. Carvajal*, 69 F.4th 1059, 1070 (9th Cir. 2023) ("the history of habeas corpus demonstrates why release from confinement is the only available remedy for claims at the writ's core[.]").  It has been clear since ICE released and re-detained Petitioner pursuant to § 236 of the INA that the Government's authority for his detention derives from § 1226(a), not § 1225(b)(2). Yet, the Government deprived Petitioner of the process owed him under that statute, including a bond hearing before a neutral decisionmaker.  *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022) (describing the "extensive procedural protections" provided under § 1226(a)).  The Court declines to allow the Government to use § 1226(a) for its detention authority but not its protections.  The appropriate remedy for this violation is not to bring the Government into conformity with its governing statutes; it is to release Petitioner from unlawful custody.  *See Quijada Cordoba v. Knight*, 809 F. Supp. 3d 1110, 1122 (D. Idaho 2025) (ordering release of detainee challenging his detention without a bond hearing and collecting cases); *Briceno Solano v. Mason*, No. 2:26-CV-00045, 2026 WL 311624, at *20 (S.D.W. Va. Feb. 4, 2026) (ordering release and rejecting the Government's argument that a bond hearing is the appropriate remedy).

Respondents argue that some courts have ordered timely bond hearings instead of immediate release "[w]hen the detention was not obviously pretextual," but that is not what the record indicates here.  (ECF No. 5 at 3.)  As Petitioner points out, the two ISAP violations listed in his Form I-213 do not evidence noncompliance with the terms of his release.  (ECF No. 10 at 2.)  The Court agrees.  Petitioner's Form I-213 states that "repeated failures often suggest no-compliance that requires follow up."  (ECF No. 5-1 at 3.)  But the Government's records only list one failed in-person home visit and one failed virtual home visit, not "repeated failures."  (*Id.*) Furthermore, that Petitioner could fail an in-person home visit by declining to allow DHS officers inside his residence finds no support in the record.  The conditions of Petitioner's release do not state that he is required to allow DHS agents to enter his home.  (*See id.* at 7, 16–19; ECF No. 1 at 88–97.)  The Court also finds notable the lengthy description of Petitioner's "attitude issues" contained in his Form I-213, which do not generate an independent ISAP violation but were apparently the reason why Petitioner came to the attention of ICE.  (*See* ECF No. 5-1 at 2 (noting

Petitioner "came to the attention of [ICE] . . . for having multiple [ATD] Violations and incidents with ATD staff.").)  Accordingly, on this record, it cannot be said that Petitioner's detention "was not obviously pretextual[.]"  (ECF No. 5 at 4.)  Immediate release is the appropriate remedy.

**IV.    CONCLUSION**

For the foregoing reasons, the Court GRANTS the Petition for Writ of Habeas Corpus. (ECF No. 1.)  IT IS HEREBY ORDERED:

1.      **Within two (2) court days from the date of this Order**, Respondent shall file a notice certifying compliance with the Court's order that Petitioner Vitalii C. (A # 249-413-802) be immediately released from custody (ECF No. 15).

2.      Respondents are ENJOINED AND RESTRAINED from re-arresting or re-detaining Petitioner absent compliance with constitutional protections, including seven-days' notice and a pre-deprivation hearing before a neutral fact-finder where (a) Respondents show material changed circumstances demonstrate a significant likelihood of Petitioner's removal in the reasonably foreseeable future, or (b) Respondents demonstrate by clear and convincing evidence that the Government's interest in protecting the public and/or ensuring Petitioner appears at future immigration proceedings outweighs Petitioner's constitutionally protected interest in remaining free from detention.  *See Zadvydas*, 533 U.S. at 690; *Hernandez*, 872 F.3d at 990.  At any such hearing, Petitioner shall be allowed to have counsel present.

3.      The Clerk of Court shall enter judgment in favor of Petitioner and close this case.

IT IS SO ORDERED.

Date: May 20, 2026

_____
TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE